Chief Justice Robertson
delivered the Opinion ofthe Comt.
The facts having been left to the jury, in this case, the only question to be considered by this court, is whether a Sheriff, having an execution under the statute of 1S28, has a right to make a forcible entry into the defendant’s house, to levy it on a slave, for which it had issued, on a judgment in detinue?
The twenty sixth section of the execution la>v of 1828, (Session Acts, page 159,) has provided, that — “When the plaintiff in detinue shall obtain judgment for any particular slave or slaves, or other thing, the clerk shall, at the request of the plaintiff or his attorney, issue an execution, directed to the sheriff, or other proper officer of any county in the State, commanding such officer to take with him, if requisite, the power of the county, and seize and take into his possession the thing so recovered, and deliver, the same to the plaintiff;” — to which is appended. *605 a proviso declaring, in substance, that the defendant shall not discharge himself by tendering the alternate value, unless the plaintiff shall elect to take it, or unless the court shall be satisfied that the property, without- the defendant’s fault, is beyond his power.
Under the common law, ‘ a man’s house is his castle,’ and an officer cannot legally break in, to execute a ca. sa. ovfi.fa. upon the tenant, or his goods ; but he may do , it where the\ process requires him to take pos session of any particular thing, - — as to execute? a writ of seizin,\ habere Ja. re-plevin, ca. tit lagatum, <yc.
If, with such a process in his hands and the posse com-itatus at his back, the sheriff finds the defendant’s house closed, and the slave which he is commanded to take is secreted in the house, may he open the door, without the defendant’s consent, and enter for the purpose of executing the writ? This question is as novel as it is important; and must be solved by analogy and by a prcq er consideration of the old law, the mischief, and the remedy intended to be afforded by the legislative enactment which has been quoted.
The common law, jealous of intrusion upon domestic peace and security, did not permit an officer to break open an outer door of the defendant’s dwelling house, for the purpose of executing a ca, sa. upon the person, or of levying a fufa, on the goods of the defendant, unless the king was plaintiff. Every man’s house was deemed his castle, and an ordinary judicial writ did not authorize the opening of the outer door, lest the king’s enemies might enter; but the officer, once legally in the house, had a right to open an inner door. 3 Inst. 162; Dal. Sher. 350. But executions in civil cases, for specific property, might have authorized the breaking of the house, if the officer could not otherwise execute the command of the writ. Executions for the specific thing which had been adjudged to be the property of the plaintiff, were of that character; such, for example, as a writ of seizin, or an habere facias possessionem; because, first, if resisted, the officer could not execute the writ, unless he employed force to overcome the resistance; second, the thing had been judicially ascertained to be the property of the plaintiff, and not of the defendant; third, the defendant would be guilty of a contempt of the court, and a prostitution of his sanctuary, by concealing within his closed walls, that which he knew not to be his, and which the law had commanded hirn to surrender to the true owner. Hence, when a writ of seizin was resisted, the offi *606 cer had a right to employ whatever force the exigency made necessary to enable him to enter the house, and to turn the defendant out and put the plaintiff in. (5 Co. 91.) Hence too, on a process of utlagcitum, as the defendant had been guilty of a persevering contempt of the law, the officer had a right to break into the house to execute the writ, either on his person or his goods; and hence also, when a distrainor refused to surrender goods which had been replevied, and attempted to secure them in his bouse, the officer had right to employ all the force that was necessary to enable him to enter the house, and restore the goods. Dal. Sher. 373; 5 Co. 93.
So also, if ono man conceals another’s goods in his house, the sheriff may break in to levy on them.
To execute n. process upon a judg’t in deti-nue, the sheriff could not, at common law, make a forcible entry into the cleft's dwel Hns; house.— But now, under our ex’on law oflS2S, he may
And it is well settled that a sheriff had authority, at common law, to enter the house of A by force, to levy a fieri facias on the goods of B, the defendant in the execution, if B’s goods were in A’s house. 61 Co. 93; Sid. 196.
An execution on a judgment in detinue did not, according to the common law, authorize the officer to enter the house of the defendant by force, because the process was in the alternative, and the defendant might have discharged the judgment by tendering the alternate value; and because also, the plaintiff might have distrained the goods of the defendant, to coerce a surrender of the specific thing which had been adjudged to him, the plaintiff.
But now, since a plaintiff may have a peremptory execution for the thing alone, reason and analogy seem to authorize a forcible entry into the house of the defendant to take the specific property. Some of the reasons that authorized such an entry in virtue of a writ of sei-zin, a process of utlagalum, or to obtain restitution of goods that had been distrained and replevied, apply, with full force, to such a process as may now be issued in detinue. And, if the house of a stranger may be forcibly entered to levy a fieri facias on the goods of another person who is defendant in the execution, why may not the defendant’s house be entered in the same way, in order to levy an execution on property, which has been ascertained by a judgment against him, to be, not his, but the plaintiff’s? When a slave has been adjudged to be the property of the plaintiff, and when he elects te *607 have a process to obtain the specific thing without evasion or alternative, why should not the officer have as much power, under such a process, as lie would have under a writ of seizin commanding him to deliver possession of real estate to the plaintiff, or as he would have, on the replevin of a distress, to take and restore the identical goods which had been distrained; or as he would have, under a fieri facias against B, to enter the house of A, and take the goods of B? The common law protects a man’s house whilst it has his own goods in it; but it does not allow it to be closed upon a process against the goods cof any other person; nor does it protect it when the process is issued against a specific thing, which has been adjudged to the plaintiff, in a suit between him and the defendant who has it in possession, and when it is either in his house, or the officer has good reason for suspecting that it is, and on proper demand, is refused admittance.
But were analogical reasonings inconclusive, the object of the enactment in 1828 should be decisive. The object of that legislative provision was to supply a defect in the common-law remedy in detinue. The chief motive for preferring an action of detinue, is a desire to obtain restitution of a specific chattel for which the owner would be unwilling to accept the estimated value. But, as the common law, by giving an election to the defendant, placed it in his power, to frustrate the plaintiff, in his specific aim, the legislature authorized an execution for the thing alone, and took from the defendant (at the plaintiff’s option,) his common law right to substitute the alternate value. The remedy provided by the act of 1828, was intended to be effectual; and such an interpretation should be given to the statute, as to insure the effectual attainment of the end which was contemplated. But, if a perverse defendant may still close his doors against an officer holding such a process as that authorized by the statute, and thus put him at defiance, the common law has been but little, if at all, amended or improved; and the posse comitatus, which the officer is directed to take with him in the first instance., if he shall apprehend resistance, would only convert the proceed *608 ing into a humiliating farce, and swell the triumph of a contumacious party over the power and majesty of the law. If the officer, with his county at his'heels, should be obstructed by a lock or a latch, must he desist, and lie, with his army in wait, around the house, watching an opportunity to enter the '■‘■fortress'’'1 by stealth, and thus be compelled either to subject the family to alarm and to seige, or to succumb to the perverse defendant, and exemplify the impotency of the law? Why take the posse comilahis unless it be to overcome all lawless opposition?
The twenty sixth section of the act of 1828 authorizes the employment of the power of the county before resistance, for the writ which that section prescribes, commands the sheriff to take the posse comitatus “if requisite:” that is, if he shall deem it necessary to insure the execution of the writ. He is not to wait until he finds resistance, because, if he should do so, he may be frustrated, and because, had any such precaution been contemplated, there would have been no meaning in so much of the statute as directs that the execution shall command the sheriff to take with him the posse comita-les; for, without such authority, he would have had the right to do so after finding resistance. This is an additional circumstance tending to shew that an effectual remedy, which should not be eluded or baffled by any means which force could overcome, was intended by the legislature. The contemplated end cannot be attained, if the sheriff cannot open the door of the defendant’s house to seize a slave which he is commanded to take, and which the defendant, by an abuse of his privilege, is endeavoring to conceal, in contempt of a solemn judgment, and in defiance of the law.
If the officer be refused admittance into the house, and the slave be then there, or he have good reason for believing that it is, he has a right to enter by force to execute his writ.
Wherefore, as the instructions of the circuit court accorded in principle and effect with the doctrine of this ^Opinion, and the verdict and judgment were sustained by the law and an allowable deduction from the facts, the judgment is affirmed.